## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERSTATE FLAGGING, INC. | : | CIVIL DOCKET NO. |
| PLAINTIFF, | : | 3:03CV1788(AWT) |
| V. | : | |
| JAMES A. WALTERS, ET AL | : | |
| DEFENDANTS | : | DECEMBER 8, 2003 |

## **AMENDED COMPLAINT**

**COUNT ONE**          **TORTIOUS INTERFERENCE AS TO JAMES A. WALTERS AND MARK KORDICK**

1.    At all times relevant hereto, the Plaintiff, *Interstate Flagging, Inc.*, was incorporated in the State of Connecticut and engaged in the business of providing traffic control services, by certified flaggers, for construction and/or utility maintenance contractors.

2.    Plaintiff's employees are certified to control traffic through programs offered through either the State of Connecticut Department of Transportation, the United States Department of Transportation, or the National Safety Council.

3.    During all times material to this complaint, the defendant, JAMES A. WALTERS ("Walters") was the Chief of Police for the City of Greenwich, State of Connecticut.

4.    During all times material to this complaint, the defendant, MARK KORDICK ("Kordick") was a duly appointed Lieutenant for the City of Greenwich, State of Connecticut.

5.    At all relevant times hereto, Walters had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

1

6.  On at least two occasions, police officer(s) in Greenwich have removed certified flaggers, employed by the Plaintiff, from construction and/or utility maintenance sites within the general township, or in specified areas.

7.  On at least two occasions, Greenwich police officer(s) shut-down construction and/or utility maintenance sites within the general township, or in specified areas, because there was no police officer to provide traffic control services.

8.  On or about March 19, 2002, the defendant, Kordick, removed a certified flagger, employed by the Plaintiff, from a construction and/or utility maintenance site conducted by Southern New England Telephone ("SNET").

9.  Thereafter, Kordick shut down SNET's work site because there was no police officer to provide traffic control services.

10. As a result of this police action, SNET terminated its business relationship with the Plaintiff.

11. On or about May 6, 2002, Kordick shut-down a Longo Construction work site because there was no police officer to provide traffic control services.

12. On or about May 7, 2002, a Greenwich police officer removed a certified flagger, employed by the Plaintiff, from a Longo Construction work site, and the Greenwich police officer assumed traffic control.

13. At the relevant time, there existed a relationship between the Plaintiff and construction and/or utility maintenance contractors for present and future contracts for services.

14. At the relevant time, Walters and Kordick knew, or should have known, of the present and future contractual relationships between the Plaintiff and construction and/or utility

2

maintenance contractors.

15. Walters' policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the police intimidated the Plaintiff's employees, thereby interfering with its business relations and ability to perform its contractual obligation for services to the construction and/or utility maintenance contractor(s).

16. Walters' policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the police intimidated the construction and/or utility maintenance contractor(s), thereby interfering with the business relations and ability to perform the contractual obligations between said construction and/or utility maintenance contractor(s) and the Plaintiff.

17. Walters' policy(ies), regulation(s), ordinance(s) or custom, together with its permissiveness with the police, and its intimidation have unjustly injured the Plaintiff in one or more of the following ways:

18. The Plaintiff cannot engage in business with construction and/or utility maintenance contractors within the town's defined area;

   a. The Plaintiff's ability to engage in business is unjustly restricted;

   b. The Plaintiff cannot enter into contracts in the future, or fully perform its past contracts, with construction and/or utility maintenance contractors within the town's defined area;

   c. The Plaintiff has suffered substantial decrease in current profits and business;

   d. The Plaintiff will suffer a substantial loss of future profits and business; and,

   e. The Plaintiff's business is in danger of closing its operations all together.

## COUNT TWO                    TORTIOUS INTERFERENCE AS TO HUGH MCMANUS

1.    At all times relevant hereto, the Plaintiff, *Interstate Flagging, Inc.*, was incorporated in the State of Connecticut and engaged in the business of providing traffic control services, by certified flaggers, for construction and/or utility maintenance contractors.

2.    Plaintiff's employees are certified to control traffic through programs offered through either the State of Connecticut Department of Transportation, the United States Department of Transportation, or the National Safety Council.

3.    During all times material to this complaint, the defendant, HUGH MCMANUS ("McManus") was the Chief of Police for the Town of Darien, State of Connecticut.

4.    At all relevant times hereto, McManus had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

5.    On at least two occasions, Darien police officer(s) have removed certified flaggers, employed by the Plaintiff, from construction and/or utility maintenance sites within the general township, or in specified areas.

6.    On at least two occasions, Darien police officer(s) shut-down construction and/or utility maintenance sites within the general township, or in specified areas, because there was no police officer to provide traffic control services.

7.    On or about April 18, 2002, police officer(s) in Darien  removed a certified flagger, employed by the Plaintiff, from a construction and/or utility maintenance site conducted by Connecituct Light and Power ("CL&P").

8.    Thereafter, the Darien police officer(s) shut down CL&P's work site because there was no police officer to provide traffic control services.

9.    As a result of this police action, CL&P terminated its business relationship with the Plaintiff.

10.   On or about May 23, 2002, CL&P cancelled at least two contracts with the Plaintiff for flaggers for future work sites.

11.   At the relevant time, there existed a relationship between the Plaintiff and construction and/or utility maintenance contractors for present and future contracts for services.

12.   At the relevant time, McManus knew, or should have known, of the present and future contractual relationships between the Plaintiff and construction and/or utility maintenance contractors.

13.   McManus' policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the police intimidated the Plaintiff's employees, thereby interfering with its business relations and ability to perform its contractual obligation for services to the construction and/or utility maintenance contractor(s).

14.   McManus' policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the police intimidated the construction and/or utility maintenance contractor(s), thereby interfering with the business relations and ability to perform the contractual obligations between said construction and/or utility maintenance contractor(s) and the Plaintiff.

15.   McManus' policy(ies), regulation(s), ordinance(s) or custom, together with its permissiveness with the police, and its intimidation have unjustly injured the Plaintiff in one or more of the following ways:

a.    The Plaintiff cannot engage in business with construction and/or utility maintenance contractors within the town's defined area;

b.    The Plaintiff's ability to engage in business is unjustly restricted;

c.    The Plaintiff cannot enter into contracts in the future, or fully perform its past contracts, with construction and/or utility maintenance contractors within the town's defined area;

d.    The Plaintiff has suffered substantial decrease in current profits and business;

e.    The Plaintiff will suffer a substantial loss of future profits and business; and,

f.    The Plaintiff's business is in danger of closing its operations all together.

**COUNT THREE**          **TORTIOUS INTERFERENCE AS TO HENRY W. RILLING, THOMAS CUMMINGS AND BILL CURWIN**

1.    At all times relevant hereto, the Plaintiff, *Interstate Flagging, Inc.*, was incorporated in the State of Connecticut and engaged in the business of providing traffic control services, by certified flaggers, for construction and/or utility maintenance contractors.

2.    Plaintiff's employees are certified to control traffic through programs offered through either the State of Connecticut Department of Transportation, the United States Department of Transportation, or the National Safety Council.

3.    During all times material to this complaint, the defendant, HENRY W. RILLING ("Rilling") was the Chief of Police for the City of Norwalk, State of Connecticut.

4.    During all times material to this complaint, the defendant, THOMAS CUMMINGS ("Cummings") was a duly appointed Police Lientenant for the City of Norwalk, State of Connecticut.

5.    During all times material to this complaint, the defendant, BILL CURWIN ("Curwin") was a duly appointed Police Officer for the City of Norwalk, State of Connecticut.

6.    At all relevant times hereto, Rilling had a custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

7.    On December 2, 1997, at approximately noon, Norwalk Police Officers harassed and threatened a certified flagger, Thomas Bailey, an employee of the plaintiff, and a Yankee Gas utility crew at a Yankee Gas work site.

8.    On December 2, 1997, at approximately 1:30 p.m., Curwin harassed and arrested a certified flagger, Williams Kuhns, an employee of the plaintiff, at a Yankee Gas utility work site. Kuhns was arrested for performing traffic control at the utility work site.

9.    On March 24, 2000, certified flaggers, employed by the plaintiff were harassed by Norwalk Police Officers at a Lewis Tree construction site, on Springhill Road, Norwalk and were forced to leave the work site.

10.   On May 23, 2002, Norwalk police officers harassed and threatened a Henkyls & McCoy worksite, forcing the Henkyls & McCoy crew to cancel the use of Interstate flaggers and use police officers.

11.   On or about September 13, 2002, Cummings harassed a certified flagger, employed by the Plaintiff, while working on utility maintenance site conducted by SNET. Cummings threatened and yelled at the flaggers, forcing the flaggers off the worksite.

12.   As a result of this police action, Henkyls & McCoy has terminated their business

relationship with the Plaintiff.

13. As a result of this police action, SNET has terminated their business relationship with the Plaintiff.

14. As a result of this police action, Yankee Gas has terminated their business relationship with the Plaintiff.

15. Rilling's customs, as established through the inaction and sanctioning of the police officers' conduct has unjustly injured the Plaintiff in one or more of the following ways:

   a. The Plaintiff cannot engage in business with construction and/or utility maintenance contractors within the town's defined area;

   b. The Plaintiff's ability to engage in business is unjustly restricted;

   c. The Plaintiff has suffered substantial decrease in current profits and business;

   d. The Plaintiff will suffer a substantial loss of future profits and business; and,

   e. The Plaintiff's business is in danger of closing its operations all together.

16. Rilling has permitted the police to engage in conduct that constitutes an abuse of the police's power.

17. Rilling's customs, as established through the inaction and sanctioning of the police officers' conduct have had the effect of monopolizing the market in one or more of the following ways:

   a. The construction and/or utility maintenance contractors do not have the ability to choose freely whom it shall employ to provide traffic control services;

   b. Construction and/or utility maintenance contractors are forced to incur the cost of hiring police officers, at an over-time rate, to provide traffic control services rather

than the Plaintiff's flaggers, at the lower market rate;

c.    There is no market or competition for traffic control services in Norwalk;

d.    Construction and/or utility maintenance companies are coerced into hiring police officers to provide traffic control in that their failure to do so would prohibit such construction and/or utility maintenance companies from conducting business in Norwalk;

e.    Police are encouraged to abuse their power to retain control of the market and to enforce such or custom.

18.    At the relevant time, there existed a relationship between the Plaintiff and construction and/or utility maintenance contractors, SNET, Yankee Gas and Henkyls & McCoy, for present and future contracts for services.

19.    At the relevant time, Rilling knew, or should have known, of the present and future contractual relationships between the Plaintiff and construction and/or utility maintenance contractors, SNET, Yankee Gas and Henkyls & McCoy.

20.    Rilling's custom and its permissiveness with the police intimidated the Plaintiff's employees, thereby intentionally interfering with its business relations and ability to perform its contractual obligation for services to the construction and/or utility maintenance contractors, SNET, Yankee Gas and Henkyls & McCoy.

21.    Rilling's custom and its permissiveness with the police intimidated the construction and/or utility maintenance contractors, thereby intentionally interfering with the business relations and ability to perform the contractual obligations between said construction and/or utility maintenance contractors, SNET, Yankee Gas and Henkyls & McCoy, and

9

the Plaintiff.

22.    Rilling and Cummings were improperly motivated to intentionally interfere with the

plaintiff's business relationship with contractors and utilities, specifically SNET, Yankee

Gas and Henkles & McCoy.  The police officers were not motivated by public safety, but

by their greed to maintain a monopoly over traffic control services because the Darien

police officers are able to earn extra money working private jobs such as traffic control for

private entities.

23.    Rillings's custom, together with its permissiveness with the police, and its intimidation

have unjustly injured the Plaintiff in one or more of the following ways:

   a.    The Plaintiff cannot engage in business with construction and/or utility

         maintenance contractors within the town's defined area;

   b.    The Plaintiff's ability to engage in business is unjustly restricted;

   c.    The Plaintiff cannot enter into contracts in the future, or fully perform its past

         contracts, with construction and/or utility maintenance contractors within the

         town's defined area;

   d.    The Plaintiff has suffered substantial decrease in current profits and business;

   e.    The Plaintiff will suffer a substantial loss of future profits and business; and,

   f.    The Plaintiff's business is in danger of closing its operations all together.

## COUNT FOUR        TORTIOUS INTERFERENCE AS TO LOUIS A DECARLO

1.    At all times relevant hereto, the Plaintiff, *Interstate Flagging, Inc.*, was incorporated in the

State of Connecticut and engaged in the business of providing traffic control services, by

certified flaggers, for construction and/or utility maintenance contractors.

10

2. Plaintiff's employees are certified to control traffic through programs offered through either the State of Connecticut Department of Transportation, the United States Department of Transportation, or the National Safety Council.

3. During all times material to this complaint, the defendant, LOUIS A. DECARLO ("DeCarlo") was the Chief of Police for the City of Stamford, State of Connecticut.

4. At all relevant times hereto, DeCarlo had a custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

5. On or about July, 2001, a Stamford Police Officer, yelled at and harassed flaggers directing traffic at a SNET worksite and forced the flaggers to stop working and instructed another police officer to direct traffic instead of the flaggers.

6. On or about August 14, 2001, a Stamford police officer ordered a certified flagger, employed by the Plaintiff, off an H&M construction and/or utility maintenance site.

7. On or about January 29, 2002, a Stamford police officer ordered a certified flagger, employed by the Plaintiff, off a construction and/or utility maintenance site;

8. As a result of this police action, SNET has terminated its business relationship with the Plaintiff.

9. As a result of this police action, Henkyls & McCoy has terminated its business relationship with the Plaintiff.

10. The DeCarlo's customs, as established through the inaction and sanctioning of the police officers' conduct, has obstructed and effected commerce.

11

11. DeCarlo's policy, ordinance and custom has unjustly injured the Plaintiff in one or more of the following ways:

   a. The Plaintiff cannot engage in business with construction and/or utility maintenance contractors within the City's defined area;

   b. The Plaintiff's ability to engage in business is unjustly restricted;

   c. The Plaintiff has suffered substantial decrease in current profits and business;

   d. The Plaintiff will suffer a substantial loss of future profits and business; and,

   e. The Plaintiff's business is in danger of closing its operations all together.

12. Stamford has permitted the police to engage in conduct that constitutes an abuse of the police's power.

13. DeCarlo's policy, ordinance and custom, and its permissiveness with the police have had the effect of monopolizing the market in one or more of the following ways:

   a. The construction and/or utility maintenance contractors do not have the ability to choose freely whom it shall employ to provide traffic control services;

   b. Construction and/or utility maintenance contractors are forced to incur the cost of hiring police officers, at an over-time rate, to provide traffic control services rather than the Plaintiff's flaggers, at the lower market rate;

   c. There is no market or competition for traffic control services in Stamford;

   d. Construction and/or utility maintenance companies are coerced into hiring police officers to provide traffic control in that their failure to do so would prohibit such construction and/or utility maintenance companies from conducting business in Stamford;

12

e.     Police are encouraged to abuse their power to retain control of the market and to enforce such policy, ordinance and custom.

14.     At the relevant time, there existed a relationship between the Plaintiff and construction and/or utility maintenance contractors, SNET and Henkyls & McCoy for present and future contracts for services.

15.     At the relevant time, DeCarlo knew, or should have known, of the present and future contractual relationships between the Plaintiff and construction and/or utility maintenance contractors, SNET and Henkyls & McCoy.

16.     DeCarlo's policy, ordinance and  or custom and its permissiveness with the police intimidated the Plaintiff's employees, thereby interfering with its business relations and ability to perform its contractual obligation for services to the construction and/or utility maintenance contractors, SNET and Henkyls & McCoy.

17.     DeCarlo's policy, ordinance and  custom and its permissiveness with the police intimidated the construction and/or utility maintenance contractor(s), SNET and Henkyls & McCoy, thereby intentionally interfering with the business relations and ability to perform the contractual obligations between said construction and/or utility maintenance contractor(s) and the Plaintiff.

18.     The Stamford police officers were improperly motivated to intentionally interfere with the plaintiff's business relationship with contractors and utilities, specifically SNET, Yankee Gas and Henkles & McCoy.  The police officers were not motivated by public safety, but by their greed to maintain a monopoly over traffic control services because the Stamford police officers are able to earn extra money working private jobs such as traffic control for

13

private entities.

19.   DeCarlo's policy, ordinance and or custom, together with its permissiveness with the

police, and its intimidation have unjustly injured the Plaintiff in one or more of the

following ways:

a.   The Plaintiff cannot engage in business with construction and/or utility

maintenance contractors within the City's defined area;

b.   The Plaintiff's ability to engage in business is unjustly restricted;

c.   The Plaintiff cannot enter into contracts in the future, or fully perform its past

contracts, with construction and/or utility maintenance contractors within the

City's defined area;

d.   The Plaintiff has suffered substantial decrease in current profits and business;

e.   The Plaintiff will suffer a substantial loss of future profits and business; and,

f.   The Plaintiff's business is in danger of closing its operations all together.

## COUNT FIVE        TORTIOUS INTERFERENCE AS TO JAMES BERRY

1.   At all times relevant hereto, the Plaintiff, *Interstate Flagging, Inc.*, was incorporated in the

State of Connecticut and engaged in the business of providing traffic control services, by

certified flaggers, for construction and/or utility maintenance contractors.

2.   Plaintiff's employees are certified to control traffic through programs offered through

either the State of Connecticut Department of Transportation, the United States

Department of Transportation, or the National Safety Council.

3.   During all times material to this complaint, the defendant, JAMES BERRY ("Berry") was

the Chief of Police for the Town of Trumbull, State of Connecticut.

14

4.  At all relevant times hereto, Berry had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

5.  On at least two occasions, police officer(s) in Trumbull have removed certified flaggers, employed by the Plaintiff, from construction and/or utility maintenance sites within the general township, or in specified areas.

6.  On at least two occasions, the Trumbull police officer(s) shut-down construction and/or utility maintenance sites within the general township, or in specified areas, because there was no police officer to provide traffic control services.

7.  As a result of this police action, construction and/or utility maintenance companies have terminated their business relationship(s) with the Plaintiff.

8.  At the relevant time, there existed a relationship between the Plaintiff and construction and/or utility maintenance contractors for present and future contracts for services.

9.  At the relevant time, Berry knew, or should have known, of the present and future contractual relationships between the Plaintiff and construction and/or utility maintenance contractors.

10. Berry's policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the police intimidated the Plaintiff's employees, thereby interfering with its business relations and ability to perform its contractual obligation for services to the construction and/or utility maintenance contractor(s).

11. Berry's policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the

police intimidated the construction and/or utility maintenance contractor(s), thereby

interfering with the business relations and ability to perform the contractual obligations

between said construction and/or utility maintenance contractor(s) and the Plaintiff.

12.  Berry's policy(ies), regulation(s), ordinance(s) or custom, together with its permissiveness

with the police, and its intimidation have unjustly injured the Plaintiff in one or more of the

following ways:

    a.  The Plaintiff cannot engage in business with construction and/or utility

        maintenance contractors within the town's defined area;

    b.  The Plaintiff's ability to engage in business is unjustly restricted;

    c.  The Plaintiff cannot enter into contracts in the future, or fully perform its past

        contracts, with construction and/or utility maintenance contractors within the

        town's defined area;

    d.  The Plaintiff has suffered substantial decrease in current profits and business;

    e.  The Plaintiff will suffer a substantial loss of future profits and business; and,

    f.  The Plaintiff's business is in danger of closing its operations all together.

## COUNT SIX    TORTIOUS INTERFERENCE AS TO RANDALPH MINEO

1.  At all times relevant hereto, the Plaintiff, *Interstate Flagging, Inc.*, was incorporated in the

State of Connecticut and engaged in the business of providing traffic control services, by

certified flaggers, for construction and/or utility maintenance contractors.

2.  Plaintiff's employees are certified to control traffic through programs offered through

either the State of Connecticut Department of Transportation, the United States

Department of Transportation, or the National Safety Council.

16

3.    During all times material to this complaint, the defendant, RANDALPH ("Randalph") was

Chief of Police for the Town of Wilton, State of Connecticut.

4.    At all relevant times hereto, Mineo had a policy(ies), regulation(s), ordinance(s) or custom

requiring that police officers have either the exclusive right, or the right of first refusal to

provide traffic control services for construction and/or utility maintenance contractors,

either within the general township, or in specified areas.

5.    On at least two occasions, police officer(s) in Wilton have removed certified flaggers,

employed by the Plaintiff, from construction and/or utility maintenance sites within the

general township, or in specified areas.

6.    On at least two occasions, the Wilton police officer(s) shut-down construction and/or

utility maintenance sites within the general township, or in specified areas, because there

was no police officer to provide traffic control services.

7.    As a result of this police action, construction and/or utility maintenance companies have

terminated their business relationship(s) with the Plaintiff.

8.    At the relevant time, there existed a relationship between the Plaintiff and construction

and/or utility maintenance contractors for present and future contracts for services.

9.    At the relevant time, Mineo knew, or should have known, of the present and future

contractual relationships between the Plaintiff and construction and/or utility maintenance

contractors.

10.    Mineo's policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the

police intimidated the Plaintiff's employees, thereby interfering with its business relations

and ability to perform its contractual obligation for services to the construction and/or

utility maintenance contractor(s).

11.    Mineo's policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the police intimidated the construction and/or utility maintenance contractor(s), thereby interfering with the business relations and ability to perform the contractual obligations between said construction and/or utility maintenance contractor(s) and the Plaintiff.

12.    Mineo's policy(ies), regulation(s), ordinance(s) or custom, together with its permissiveness with the police, and its intimidation have unjustly injured the Plaintiff in one or more of the following ways:

    a.    The Plaintiff cannot engage in business with construction and/or utility maintenance contractors within the town's defined area;

    b.    The Plaintiff's ability to engage in business is unjustly restricted;

    c.    The Plaintiff cannot enter into contracts in the future, or fully perform its past contracts, with construction and/or utility maintenance contractors within the town's defined area;

    d.    The Plaintiff has suffered substantial decrease in current profits and business;

    e.    The Plaintiff will suffer a substantial loss of future profits and business; and,

    f.    The Plaintiff's business is in danger of closing its operations all together.

## COUNT SEVEN        TORTIOUS INTERFERENCE AS TO CHRISTOPHER LYNCH

1.    At all times relevant hereto, the Plaintiff, *Interstate Flagging, Inc.*, was incorporated in the State of Connecticut and engaged in the business of providing traffic control services, by certified flaggers, for construction and/or utility maintenance contractors.

2.    Plaintiff's employees are certified to control traffic through programs offered through

either the State of Connecticut Department of Transportation, the United States Department of Transportation, or the National Safety Council.

3.  During all times material to this complaint, the defendant, CHRISTOPHER LYNCH ("Lynch") was the Chief of Police for the Town of New Canaan, State of Connecticut.

4.  At all relevant times hereto, Lynch had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

5.  On at least two occasions, police officer(s) in New Canaan have removed certified flaggers, employed by the Plaintiff, from construction and/or utility maintenance sites within the general township, or in specified areas.

6.  On at least two occasions, the New Canaan police officer(s) shut-down construction and/or utility maintenance sites within the general township, or in specified areas, because there was no police officer to provide traffic control services.

7.  As a result of this police action, construction and/or utility maintenance companies have terminated their business relationship(s) with the Plaintiff.

8.  At the relevant time, there existed a relationship between the Plaintiff and construction and/or utility maintenance contractors for present and future contracts for services.

9.  At the relevant time, Lynch knew, or should have known, of the present and future contractual relationships between the Plaintiff and construction and/or utility maintenance contractors.

10.  Lynch's policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the

19

police intimidated the Plaintiff's employees, thereby interfering with its business relations and ability to perform its contractual obligation for services to the construction and/or utility maintenance contractor(s).

11. Lynch's policy(ies), regulation(s), ordinance(s), or custom and its permissiveness with the police intimidated the construction and/or utility maintenance contractor(s), thereby interfering with the business relations and ability to perform the contractual obligations between said construction and/or utility maintenance contractor(s) and the Plaintiff.

12. Lynch's policy(ies), regulation(s), ordinance(s) or custom, together with its permissiveness with the police, and its intimidation have unjustly injured the Plaintiff in one or more of the following ways:

    a.    The Plaintiff cannot engage in business with construction and/or utility maintenance contractors within the town's defined area;

    b.    The Plaintiff's ability to engage in business is unjustly restricted;

    c.    The Plaintiff cannot enter into contracts in the future, or fully perform its past contracts, with construction and/or utility maintenance contractors within the town's defined area;

    d.    The Plaintiff has suffered substantial decrease in current profits and business;

    e.    The Plaintiff will suffer a substantial loss of future profits and business; and,

    f.    The Plaintiff's business is in danger of closing its operations all together.

**COUNT EIGHT:     CUTPA GENERAL STATUTES 42-11b VIOLATIONS BY MUNICIPALITIES: DARIEN, STAMFORD, GREENWICH, TRUMBULL, WILTON**

1.     Counts, One, Two, Three, Four, Five, Six, and Seven are hereby incorporated into this the Eighth Count.

2.     At all times relevant hereto, the Defendant Town of Darien ("Darien") was a duly incorporated municipality of the State of Connecticut.

3.     At all relevant times hereto, Darien had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

4.     At all times relevant hereto, the Defendant Town of Trumbull ("Trumbull") was a duly incorporated municipality of the State of Connecticut.

5.     At all relevant times hereto, Trumbull had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

6.     At all times relevant hereto, the Defendant Town of Greenwich ("Greenwich") was a duly incorporated municipality of the State of Connecticut.

7.     At all relevant times hereto, Greenwich had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

8.    At all times relevant hereto, the Defendant Town of Wilton ("Wilton") was a duly incorporated municipality of the State of Connecticut.

9.    At all relevant times hereto, Wilton had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas.

10.   At all times relevant hereto, the Defendant City of Stamford ("Stamford") was a duly incorporated municipality of the State of Connecticut.

11.   At all relevant times hereto, Stamford had a policy(ies), regulation(s), ordinance(s) or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general City, or in specified areas.

12.   The municipalities conduct offends public policy concept of unfairness, in that the Towns have instituted regulations and policies preventing the use of private flagging companies to control traffic.

13.   The municipalities conduct has been immoral, unethical, oppressive and unscrupulous in that through police officers, the Chief of police and union members, the Towns have engaged in physical threats, intimidation and threats of arrest in order to enforce their unfair policy.

14.   The actions of the towns have acused substantial injury to: (1) the consumers: SNET, YANKEE GAS, PL&G, public utilities, and construction companies; (2) competitors: the private flagging companies, including the plaintiff; and (3) the public, in that the public

22

taxpayers must shoulder the burden of paying the police officers overtime, while the private flagging companies charge 1/4 the amount to perform the same traffic control.

15. Consumers such as public utilities and the public can not avoid the extra fees charged by the unionized police officers earning overtime for such traffic control.

16. The municipalities have engaged in unfair methods of competition and unfair or deceptive acts in the conduct of performing traffic control.

17. Each Municipality has engaged in multiple acts that violate CUTPA, including: (1) the passage of such legislation requiring the right of first refusal or the exclusive right to traffic control and (2) the enforcement of such legislation through the use of intimidation and threats of arrest or physical violence.

WHEREFORE, the Plaintiff prays for the following relief with regard to all counts:

1.      Compensatory money damages in the amount of 2 million dollars;

2.      Punitive damages pursuant to the common law of the State of Connecticut;

3.      Attorney's fees and costs, pursuant to General Statutes 42-110g(d), and any other

        applicable law;

4.      Punitive damages,

5.      Actual damages including lost and future profits pursuant to General Statutes 42-110b;

        and,

6.      Such other relief as the court deems equitable.

7.      A Jury Trial is requested.


                                                THE PLAINTIFF,

                                        BY
                                                James S. Brewer
                                                Erin I. O'Neil
                                                Brewer & O'Neil, LLC
                                                818 Farmington Avenue
                                                West Hartford, CT 06119
                                                Firm Juris. #: 421163
                                                Tel.: (860)523-4055
                                                Fax: (860) 233-4215

## CERTIFICATION

I hereby certify that a copy of the foregoing Motion was either mailed, postage prepaid, or hand delivered this December 8, 2003, to the following:

James P. Mooney
Raymond J. Kelly
2452 Black Rock Turnpike
Fairfield, CT 06825

Jeffrey Spahr, Office of Corp. Counsel
P.O. Box 798
Norwalk, CT 06856

Jonathan P. Whitcomb
Diserio, Martin, O'Connor & Castiglioni
One Atlantic Street
Stamford, CT 06901

James V. Minor
888 Washington Boulevard
P.O. Box 10152
Stamford, CT 06904-2152

Frank Szilagyi
Silvester & Daly
72 Russ Street
Hartford, CT 06103

Frank Murphy
Tierney, Zullo, Flaherty and Murphy
134 East Avenue, Box 2028
Norwalk, CT 06852-2028

Stephen P. Fogerty
Halloran & Sage
315 Post Road West
Westport, CT 06880

Hassett & George
555 Franklin Avenue
Hartford, CT 06114

Cohen & Wolf
115 Broad Street
Box 1821
Bridgeport, CT 06601-1821

—————————————————
Erin I. O'Neil